AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Light Blue Apple iPhone Cell Phone<br>Seized as FP&F No. 2023565400003201 Line Item 0001<br>("Target Device 1") | Case No.  '22 MJ4269 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U. S. C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: 11/21/2022

*Judge's signature*

City and state: San Diego, California          HON. Daniel E. Butcher, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-1

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Light Blue Apple iPhone Cell Phone
Seized as FP&F No. 2023565400003201 Item 0001
("**Target Device 1**")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **October 19, 2022, through November 19, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

## AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Light Blue Apple iPhone Cell Phone
> Seized as FP&F No. 2023565400003201 Item 0001
> (**"Target Device 1"**)
>
> Black Apple iPhone Cell Phone
> Seized as FP&F No. 2023565400003202 Item 0002
> (**"Target Device 2"**)

the **Target Devices**, as further described in Attachment A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrants related to the investigation and prosecution of Stephanie Daniela MORENO-Lara and Jesus SANDOVAL for attempting to transport and move illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

//
//

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for fourteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On November 19, 2022, Border Patrol Agents D. Hunt, E. Lavergne, and J. Rambo were performing their assigned duties in the Chula Vista Border Patrol Station's area of responsibility. Agents Hunt, Lavergne, and Rambo were wearing full rough duty uniform with all insignia and badge visible; Agents Lavergne and Rambo were driving fully marked Border Patrol vehicles equipped with fully functioning emergency lights and sirens.

12. At approximately 1:19 PM agents in the field were notified of a seismic intrusion device activation in an area known to Border Patrol Agents as the "T Intersection". Agent Hunt responded to the area on his All Terrain Vehicle (ATV) and observed an Acura parked with several other cars. The Acura matched the description of a "be on the lookout" (BOLO) vehicle from earlier in the day, as it was seen performing loops by Agent Lavergne. Agent Hunt observed two individuals, later identified as the defendants Jesus SANDOVAL and Stephanie Daniela MORENO-Lara sitting in the Acura. Agent Hunt approached the Acura, and told MORENO to turn off the ignition, to which she ignored, and as Agent Hunt stepped to the rear of the vehicle to verify the license plate, Agent Hunt observed the reverse lights on the Acura turn on, almost strike Agent Hunt. MORENO then put the vehicle in drive and struck the ATV, pushing it approximately 10 feet, and then drive west at a high rate of speed on Otay Mesa Road and run a red light at the intersection of Otay Mesa Road and Alta Road.

13. Agent Hunt then walked approximately 50 yards and observed three individuals attempting to conceal themselves in thick bushes. This area is located approximately one mile north of the United States/Mexico International Boundary, and approximately two miles east of the Otay Mesa, California Port of Entry. Agent Hunt identified himself as a Border Patrol Agent and conducted an immigration inspection. All

three individuals, later identified as material witnesses, Hector DE LA CRUZ-De Jesus, Mario MATEO De la Cruz, and Jose Luis MENDOZA-Soto stated that they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. At approximately 1:45 PM Agent Hunt placed DE LA CRUZ, MATEO, and MENDOZA under arrest.

14. Agent Lavergne responded to the last known location of the Acura on State Route 905 and State Route 11. Agent Rambo implemented a traffic break in order to slow traffic down. Agent Lavergne then observed the Acura pass his location on State Route 905, and Agent Lavergne positioned his vehicle behind the Acura, and initiated a vehicle stop. The Acura then failed to yield, reaching speeds of over 110 miles per hour. The Acura then merged onto north Interstate 5 (I-5), and used the shoulder of I-5 to pass other vehicles. Agent Lavergne also observed the Acura exit and re-enter I-5 several times in order to lose him in the residential areas. Agent Lavergne also observed the Acura cut across all lanes of traffic, making it onto State Route 805 north. Agent Lavergne, who unable to make the same unsafe lane changes, notified the San Diego Police Department (SDPD), who then spotted the Acura and conducted a vehicle stop in the 4000 block of Wightman St in San Diego, California. Agent Lavergne arrived at the SDPD vehicle stop and at approximately 2:30 PM Agent Lavergne placed MORENO and SANDOVAL under arrest.

15. At the time of arrest, a light blue Apple iPhone Cell Phone (**Target Device 1**), was recovered from MORENO's right front pants pocket, and a black Apple iPhone cell phone (**Target Device 2**) was found in SANDOVAL's front left pants pocket. Both of these devices were subsequently seized. MORENO and SANDOVAL both claimed that the phones that were found on them were their phones.

16. The defendant, CHAVEZ was read his Miranda Rights and stated that he understood his rights and was willing to speak without an attorney present. CHAVEZ Jr. stated that he did not know the rear passengers or that they were illegal in the country.

6

17. The defendant Jesus SANDOVAL, was read his Miranda Rights. SANDOVAL acknowledged his Miranda Rights and was willing to answer questions without a lawyer present. SANDOVAL stated that he was willing to speak in order to alleviate any consequences for his girlfriend, Stephanie Daniela MORENO-Lara. SANDOVAL stated that he was in the area of Otay Mesa, California in order to pick up undocumented aliens. SANDOVAL also stated that he instructed MORENO to flee from agents and to hit the Border Patrol All-Terrain Vehicle in the process. SANDOVAL stated that he previously worked at an Amazon fulfillment warehouse in Otay Mesa, California and was aware that the area is commonly used for alien smuggling. SANDOVAL stated that he did not know how much he was going to be paid for picking up illegal aliens.

18. Material witnesses Hector DE LA CRUZ-De Jesus, Mario MATEO-De La Cruz and Jose Luis MENDOZA-Soto stated they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. DE LA CRUZ and MATEO stated that their destination was Reno, Nevada. MENDOZA stated that his destination was Los Angeles, California. MATEO and MENDOZA stated that they agreed to pay between $8,000 and $12,000 USD to be smuggled into the United States. MATEO stated that he was instructed by an unknown coordinator located in Tijuana, Mexico to reach the "factories" to be picked up and taken further north. MATEO stated that once they reached their hiding location, they were provided with the contact number for the driver of the vehicle that would be picking them up. MATEO stated that from their hiding location, he was unable to see the vehicle attempt to abscond from agents.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using

7

the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **October 19, 2022, through November 19, 2022.**

## METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

24. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

25. Because the **Target Devices** were seized at the time of MORENO and SANDOVAL's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **October 19, 2022, through November 19, 2022.**

26. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and A-2, seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 21st day of November 2022.

HON. DANIEL E. BUTCHER
United States Magistrate Judge

10